UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| WILBUR-ELLIS COMPANY LLC,<br><br>    Plaintiff,<br><br>vs.<br><br>BRETT JENS, SHANE FASTNACHT,<br>PHYLICIA HOFFMAN, WES HOTCHKISS,<br>and J.R. SIMPLOT COMPANY,<br><br>    Defendants. | 4:23-CV-04104-LLP<br><br>MEMORANDUM OPINION AND ORDER<br>DENYING MOTION FOR INJUNCTION<br>PENDING APPEAL |

Pending before the Court is Plaintiff Wilbur-Ellis Company LLC's ("Wilbur-Ellis" or "Plaintiff") Motion for Injunction Pending Appeal pursuant to Rule 8(a)(1) of the Federal Rules of Appellate Procedure. (Doc. 96.) Defendants resist the motion. The Court heard argument on March 19, 2024. For the following reasons, the Motion for Injunction Pending Appeal is denied.

## BACKGROUND

Wilbur-Ellis argues that the Court erred in denying its request for a preliminary injunction which, if granted, would have prohibited Brett Jens ("Jens") from working for Simplot. The Court's Memorandum Opinion and Order denying Wilbur-Ellis's motion for a preliminary injunction sets forth the facts in detail. (Doc. 85.) Wilbur-Ellis appealed the Court's decision to the Eighth Circuit on November 28, 2023. (Doc. 86.) Wilbur-Ellis argues that this Court clearly erred in denying injunctive relief and asks the Court to reconsider its decision and grant injunctive relief pending Wilbur-Ellis's appeal to the Eighth Circuit.

## LEGAL STANDARD

Rule 8(a)(1) of the Federal Rules of Appellate Procedure allows a party to seek an order granting an injunction while an appeal is pending. A party must ordinarily move first in the district court for an order granting an injunction pending appeal. Fed. R. App. P. 8(a)(1)(C). The standard for granting an injunction pending appeal is: (1) whether the applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured

absent an injunction pending appeal; (3) whether issuance of the injunction pending appeal will substantially injure the other interested parties; and (4) where the public interest lies. *Hilton v. Braunskill,* 481 U.S. 770, 776 (1987). These factors are essentially the same as those considered in determining whether preliminary injunctive relief is appropriate. *See Dataphase Sys. Inc. v. C L Sys.,* Inc., 640 F.2d 109, 114 (8th Cir. 1981). This is so "because similar concerns arise whenever a court order may allow or disallow anticipated action before the legality of that action has been conclusively determined." *Nken v. Holder,* 556 U.S. 418, 434 (2009).

## DISCUSSION

The primary issue is whether the Court erred by concluding that Jens's Employment Agreement expired by its own terms on February 28, 2010, and that the restrictive covenants did not survive termination of the Agreement due to the lack of a survival clause. The crux of this dispute centers on paragraph 2 of the Employment Agreement:

> Term. The employment term shall commence on the Effective Date and, unless otherwise terminated, shall continue through February 28, 2010. Thereafter, the employment of the Employee by the Employer shall continue at will and shall terminate upon written notice of such termination given by either party, or upon the death or physical or mental disability.

The restrictive covenants are set forth in paragraph 5 of the Agreement:

> (ii) The Employee further covenants and agrees that he will not, at any time for a period of three (3) years following the date his employment is terminated, for whatever reason (the "Restriction Period"), directly or indirectly, (A) engage in any business engaged in the marketing, distribution, sale or application (or any segment thereof) of agricultural chemicals, fertilizer, seed and related products within one hundred (100) miles of the area served by business acquired from Dakota Airspray (the "Competitive Business"), whether such engagement shall be as an owner, partner, employee, agent, consultant, or shareholder (except as the holder of not more than five percent (5%) of the outstanding shares of a corporation whose stock is listed on any national or regional securities exchange or any successor thereto) or in any other capacity; (B) directly or indirectly solicit, divert or accept business from or otherwise take away or interfere with any customer of the Employer or its affiliates or subsidiaries engaged in any Competitive Business, including without limitation, any person who was a customer of, or whose business was being pursued by, the Employer in the conduct of its business prior to the date hereof; or (C) solicit the employment of any person employed by the Employer or its affiliates or subsidiaries.

(Exhibit 1, p. 2, ⁋ 5.)

In ruling on Wilbur-Ellis's motion for a preliminary injunction, this Court held, in part:

[T]he Agreement states that Jens's "employment term" continues through February 28, 2010, and that Jens's employment "shall continue at will" following February 28, 2010. The non-compete and non-solicitation covenants are "for a period of three (3) years following the date [Jens's] employment is terminated." Jens's Agreement expired by its own terms on February 28, 2010. The Agreement does not specify that the restrictive covenants would survive after the Agreement expired. Under *Miller*, expiration of the Agreement on February 28, 2010, rendered the restrictive covenants unenforceable after February 28, 2013 at the latest. Because the restrictive covenants are no longer enforceable, Wilbur-Ellis is not entitled to injunctive relief based on its breach of contract claim against Jens.

(Doc. 85, pp. 8-9.)

Wilbur-Ellis argues that paragraph 2 provides for expiration of the term of employment, not for expiration of the Employment Agreement.[1] Therefore, according to Wilbur-Ellis, the Court erred when it found that the Agreement expired by its own terms on February 28, 2010. Wilbur-Ellis asserts that the lack of language providing for expiration or termination of the Agreement removes it from the purview of *Miller v. Honkamp Krueger Fin. Services, Inc.*, 9 F.4th 1011 (8th Cir. 2021), and a survival clause was not necessary to keep the restrictive covenants in force. Wilbur-Ellis points to the language providing that the restrictive covenants are "for a period of three (3) years following the date [Jens's] employment is terminated," arguing that the termination of Jens's employment on June 29, 2023, was the only event that triggered both the end of the Agreement and the beginning of the restrictive covenants. In its Reply Brief, Wilbur-Ellis sums up its argument in support of an injunction pending appeal:

> Wilbur-Ellis's position is that an express survival clause is not necessary when an employment agreement provides for an initial "for-cause" term of employment, followed by an automatic and seamless transition to at-will employment, and the restrictive covenants are connected to start when the employee's employment ends.

(Doc. 107, pp. 5-6.)

---

[1] Wilbur-Ellis did not raise this argument in support of its motion for a preliminary injunction. In fact, at the preliminary injunction phase, even Wilbur-Ellis referred to the term of the Employment Agreement as three years. (Doc. 29, p.17 n.3) ("Defendants will no doubt attempt to argue that the lack of a standalone survival clause in Jens's Employment Agreement renders the restrictive covenants therein unenforceable upon the expiration of the approximately three-year Term of the Employment Agreement.")

The Court is not convinced that it erred in denying injunctive relief in this case. The word "term" in paragraph 2 refers to the term of the Employment Agreement and the term of Jens's "for-cause" employment under the Employment Agreement. Or, as stated by Simplot, "[o]nce the three-year term of employment ended, the Employment Agreement was completely performed, and the Employment Agreement no longer governed the terms of Jens's employment. Instead, Jens is an at-will employee." (Doc. 105, p. 9.)

It makes sense to interpret the word "term" in paragraph 2 of the Employment Agreement as referring to the term of Jens's Employment. There is no language indicating that the parties intended the Agreement to govern their employment relationship into the indefinite future, or until the end of Jens's at-will employment, nor is there a durational term for the Employment Agreement elsewhere in the four corners of the Agreement. In addition, later clauses in the Employment Agreement do not mention a term of Jens's employment, but rather refer to the term of the Employment Agreement. As pointed out by Jens in his brief:

> In Section 8 of the Agreement concerning the "Bonus Program", the contract recites Jens's bonus eligibility for calendar years 2007, 2008, and 2009, which are the full calendar years prior to the February 28, 2010, date when Jens's "for cause" employment ended pursuant to Section 2 of the Agreement. Section 8 of the Agreement begins: "Subject to Employee's continued employment with Employer as of the last day of a calendar year during the *term of this Agreement*." (Emphasis added.) Section 10 of the Agreement on Fringe Benefits concludes with, "…the amount of vacation days to which Employee is entitled during the *term* of this Agreement." (Emphasis added.). Section 11 on Confidentiality begins: "The Employee expressly covenants and agrees that *during the term of this Agreement . . .* ". (Emphasis added).

(Doc. 102, pp. 3-4.)

Reading the Employment Agreement as a whole, it unambiguously provides that the Employment Agreement expired on February 10, 2010. The restrictive covenants did not survive expiration of the Agreement due to the lack of a survival clause.

For these reasons, the Court concludes that Wilbur-Ellis is not likely to succeed on appeal on the merits of its breach of contract claim against Jens, and the other factors (irreparable harm to Wilbur-Ellis, the balance of harms, and the public interest) also weigh against granting an injunction pending appeal. Accordingly,

4

**IT IS ORDERED** that Plaintiff's Motion for Injunction Pending Appeal is denied. (Doc. 96.)

Dated this 9th day of April, 2024.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
MATTHEW W. THELEN, CLERK

5