UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| WILBUR-ELLIS COMPANY LLC,<br><br>Plaintiff,<br><br>vs.<br><br>BRETT JENS, J.R. SIMPLOT COMPANY, SHANE FASTNACHT, PHYLICIA HOFFMAN, WES HOTCHKISS,<br><br>Defendants. | 4:23-CV-04104-RAL<br><br><br>OPINION AND ORDER DENYING MOTION TO CERTIFY QUESTION TO SOUTH DAKOTA SUPREME COURT AND AFFIRMING ORDER ON APPLICATION FOR FEES |

In 2023, Plaintiff Wilbur-Ellis Company LLC (W-E) filed a lawsuit against its former employees, Individual Defendants Brett Jens (Jens), Shane Fastnacht (Fastnacht), Phylicia Hoffman (Hoffman), and Wes Hotchkiss (Hotchkiss), as well as the company, Defendant J.R. Simplot Company (J.R. Simplot), which was a competitor of W-E and the new employer of the Individual Defendants. See Doc. 22. The facts and allegations underlying the Complaint are recounted in Judge Lawrence L. Piersol's Memorandum Opinion and Order Denying Motion for Preliminary Injunction, see Doc. 85 at 2–5, as well as Magistrate Judge Veronica L. Duffy's Order on the Motion to Compel, see Doc. 174 at 2–12, however, facts relevant to the two pending matters are repeated below. This Court now denies Plaintiff W-E's Motion to Certify Question to the South Dakota Supreme Court Pursuant to S.D.C.L. § 15-24A-1, Doc. 220, and affirms Judge Duffy's Order Granting in Part and Denying in Part Individual Defendants' Motion for Attorney's Fees, Doc. 213.

1

I.      **Motion to Certify Question to the South Dakota Supreme Court**

   A. **Factual and Procedural Background**

Prior motions, briefing, and decisions have addressed the enforceability of the restrictive covenants in Defendant Jens's Employment Agreement (Agreement) with his former employer, Plaintiff W-E. W-E purchased the company, Dakota Air Spray, in 2007, and in conjunction with that transaction, Jens signed the Agreement at issue. Jens was the only former-employee defendant to sign an agreement with W-E and that Agreement contains the following terms:

The first paragraph of the Agreement identifies the parties:

> THIS AGREEMENT is made as of March 16, 2007 (the "Effective Date") between Wilbur-Ellis Air, LLC, a South Dakota limited liability company ("the Employer") and Brett A. Jens ("the Employee").

Doc. 1-1 at 2.

Recital A of the Agreement provides:

> Concurrently herewith, Employer, a wholly-owned subsidiary of Wilbur-Ellis Company, a California Corporation ("Wilbur-Ellis"), and Krech Dakota Airspray, Inc., a South Dakota corporation ("Dakota Airpsray") [sic], have entered into that certain Asset Purchase Agreement ("APA"), pursuant to which Employer has purchased from Dakota Airspray assets relating to the business of the marketing, sale, application and distribution of agricultural chemicals, fertilizers, seeds and related products (the "Business").

Id.

Section 2 of the Agreement defines its term:

> Term. The employment term shall commence on the Effective Date and, unless otherwise terminated, shall continue through February 28, 2010. Thereafter, the employment of the Employee by the Employer shall continue at will and shall terminate upon written notice of such termination given by either party, or upon the death or physical or mental disability of the Employee which prevents such Employee from performing his or her duties hereunder.

Id.

2

> The restrictive covenants are set forth in section 5:
>
> (ii) The Employee further covenants and agrees that he will not, at any time for a period of three (3) years following the date his employment is terminated, for whatever reason (the "Restriction Period"), directly or indirectly, (A) engage in any business engaged in the marketing, distribution, sale or application (or any segment thereof) of agricultural chemicals, fertilizer, seed and related products within one hundred (100) miles of the area served by business acquired from Dakota Airspray (the "Competitive Business"), whether such engagement shall be as an owner, partner, employee, agent, consultant, or shareholder (except as the holder of not more than five percent (5%) of the outstanding shares of a corporation whose stock is listed on any national or regional securities exchange or any successor thereto) or in any other capacity; (B) directly or indirectly solicit, divert or accept business from or otherwise take away or interfere with any customer of the Employer or its affiliates or subsidiaries engaged in any Competitive Business, including without limitation, any person who was a customer of, or whose business was being pursued by, the Employer in the conduct of its business prior to the date hereof; or (C) solicit the employment of any person employed by the Employer or its affiliates or subsidiaries.

Id. at 3.

> Section 14 of the Agreement states:
>
> Remedies. The Employee acknowledges that a violation of any of the provisions of this Agreement, including its restrictive covenants, will cause irreparable damage to the Employer, its successors and assigns. The Employee consents that any violation shall entitle the Employer or its successors and assigns, in addition to any other rights or remedies it, or they, may have, to an immediate injunction restraining Employee from committing or continuing any violation of this Agreement. Employee will not assert any claim or defense in any action or proceeding to enforce any provision hereof that the Employer has or had an adequate remedy at law.

Id. at 5.

Jens worked for W-E until June 29, 2023, after which he went to work for J.R. Simplot, a competitor of W-E. W-E sued Jens and others, and the Amended Complaint contains a total of twelve counts, including a count alleging Breach of Employment Agreement against Jens (Count 1). Docs. 1, 22.

3

In his Order on Plaintiff's Motion for a Preliminary Injunction, Judge Piersol denied W-E's request for preliminary injunctive relief based on its breach of contract claim against Jens. Doc. 85. Applying principles of South Dakota contract interpretation and relevant Eighth Circuit precedent, Judge Piersol determined that because the restrictive covenants did not survive past the Agreement's expiration on February 28, 2010, W-E was unlikely to succeed on the merits of this claim. Doc. 85 at 7–9. W-E appealed the denial of the preliminary injunction as to Jens's breach of the Agreement and Simplot's tortious interference with it to the United States Court of Appeals for the Eighth Circuit. Doc. 86; Doc. 218 at 2–3. On appeal, W-E argued that the language of the contract was plain and unambiguous, and that the parties did not intend for the restrictive convents to expire at the end of the term of the Agreement; instead, the parties intended for the restrictive convents to expire three years after Jens left the company "for whatever reason," as Jens had continued to work at-will for over a decade after the Agreement expired. See Doc. 86; Doc. 218 at 2–3; Brief for Wilbur-Ellis, Wilbur-Ellis v. Jens, 139 F.4th 608 (8th Cir. 2025) (No. 23-3610), 2024 WL 199140, at *23–26.

In May 2025, the Eighth Circuit affirmed Judge Piersol's denial of the Motion for Preliminary Injunction. Doc. 218 at 2. Reviewing South Dakota law and its prior decision in Miller v. Honkamp Krueger Financial Services, Inc., 9 F.4th 1011 (8th Cir. 2021), the Eighth Circuit differentiated between the term of employment and the term of the employment agreement. Id. at 4–5 (citing 9 F.4th at 1014–15; Wilbur-Ellis Co. v. Erikson, 103 F.4th 1352, 1356–57 (8th Cir. 2024)). The Eighth Circuit concluded that Judge Piersol did not abuse his discretion in denying Plaintiff's Motion for Preliminary Injunction as "[t]he Agreement does not contain a survival clause or any language to suggest the parties intended for the Restrictive Covenants to survive past the termination of the Agreement," and therefore, the Restrictive Covenants "became

inoperable after February 28, 2010." Id. at 6 (citing Miller, 9 F.4th at 1015). Judge Loken concurred separately agreeing with the district court's denial of a preliminary injunction but observing "the issue of contract ambiguity under South Dakota law is open for further development and analysis when the district court addresses the merits." Id. at 7–9.

A few weeks after the Eighth Circuit opinion and almost two years after W-E filed its initial Complaint, W-E filed a Motion to Certify Question to the South Dakota Supreme Court Pursuant to S.D.C.L. § 15-24A-1. Docs. 220, 221. W-E proposes the following question to be certified:

> Whether under South Dakota law, post-employment restrictive covenants contained in an employment agreement survive the expiration of the term or other termination of the employment agreement where the contract expressly provides that the restrictive covenants begin to run upon the termination of employment, irrespective of whether the contract contains an express survival clause.

Doc. 220 at 1. All Defendants oppose the Motion to Certify. Docs. 223, 224.

### B. Certification Analysis

When a state's highest court has not spoken on an issue, district courts exercising diversity jurisdiction "must attempt to predict" what the state court would do. Jurrens v. Hartford Life Ins. Co., 190 F.3d 919, 922 (8th Cir. 1999) (citation omitted). When making such a prediction, district courts "may consider relevant state precedent, analogous decisions, considered dicta, and any other reliable data." Id. (cleaned up and citation omitted). However, "[a]bsent a 'close' question and lack of state sources enabling a nonconjectural determination, a federal court should not avoid its responsibility to determine all issues before it." Shakopee Mdewakanton Sioux Cmty. v. City of Prior Lake, 771 F.2d 1153, 1157 n.2 (8th Cir. 1985).

This Court may certify a question of law to the Supreme Court of South Dakota "if there are questions of law of [the State of South Dakota] involved in any proceeding before the certifying court which may be determinative of the cause pending in the certifying court and it appears to the

certifying court and to the Supreme Court [of South Dakota] that there is no controlling precedent in the decisions of the Supreme Court of this state." SDCL § 15-24A-1. But whether to certify a question of law to a state supreme court rests in the court's "sound discretion," and "[c]ertification is by no means obligatory merely because state law is unsettled." McKesson v. Doe, 592 U.S. 1, 5 (2020) (per curiam) (cleaned up and citation omitted). "Our system of cooperative judicial federalism presumes federal and state courts alike are competent to apply federal and state law." Id. (cleaned up and citation omitted).

The Eighth Circuit has articulated various factors to consider when deciding whether to certify a question to a state supreme court. See, e.g., Smith v. SEECO, Inc., 922 F.3d 406, 412 (8th Cir. 2019); Hatfield, by Hatfield v. Bishop Clarkson Mem'l Hosp., 701 F.2d 1266, 1268–69 (8th Cir. 1983); Perkins v. Clark Equip. Co., 823 F.2d 207, 209–10 (8th Cir. 1987). See also Rodriguez v. VanIperen, 736 F. Supp. 3d 699, 731–32 (D.S.D. 2024). Consistent throughout many of these Eighth Circuit and district court cases are some combination of the following factors: (1) the state supreme court's authority to answer a certified question; (2) whether the legal question is "an extremely close one"; (3) whether there is enough guidance for the court to correctly predict how to answer the question; (4) which party seeks certification; (5) whether there has already been an adverse decision in federal court against the party seeking certification; (6) whether the case is primarily federal or in federal court by the means of diversity jurisdiction; (7) how often the issue is likely to reoccur; and (8) whether certification would cause undue delay or increase in expenses. See Smith, 922 F.3d at 412; Hatfield, 701 F.2d at 1268–69; Perkins, 823 F.2d at 209–10; Rodriguez, 736 F. Supp. 3d at 731–32. This is not an instance that justifies certification under these factors.

First, the issue W-E seeks to have certified does not present an extremely close legal question. Hatfield, 701 F.2d at 1268. In Smith v. SEECO, Inc., the Eighth Circuit determined that it would be improper to certify a question that was "an ordinary question of contract interpretation which federal courts are well-equipped to answer." 922 F.3d at 412. In its motion, W-E posits that this question "presents an issue of law that can only be resolved by the South Dakota Supreme Court." Doc. 221 at 10. But W-E's disagreement with the outcome of the preliminary injunction litigation does not change the fact that the question presented is "an ordinary question of contract interpretation which federal courts are well-equipped to answer." Smith, 922 F.3d at 412; see also Doc. 85 at 7 (reviewing South Dakota law on contract interpretation); Doc. 218 at 4–5 (noting standard of review for contract interpretation and reviewing South Dakota law on contract interpretation); Brief for Wilbur-Ellis, 2024 WL 199140, at *25 (arguing "[t]he plain and unambiguous language compels a finding that the Restrictive Covenants contained in the Agreement remained in effect"). In its motion to certify, W-E appeared to acknowledge that this is an issue of contract interpretation but later attempted to distinguish the issue in its Reply as a "a strictly *legal* issue related to the framework for interpreting contracts." Doc. 221 at 9 (noting that, in answering the proposed question, the Supreme Court of South Dakota would "rely on its rules of contract construction and interpretation."); Doc. 227 at 1 (arguing that it "seeks clarity. . . on a strictly *legal* issue related to the framework for interpreting contracts, not on an issue of actual contract interpretation" and "the issue is beyond 'basic' contract interpretation parameters"); id. at 6 ("The proposed question does not ask the [South Dakota Supreme] Court to interpret the Agreement . . . ."). As in Smith, the issue W-E seeks to certify is "an ordinary question of contract interpretation," which weighs against certification.

7

Second, the timing of the motion to certify weighs against granting certification. "The appropriate time to seek certification of a state-law issue is before a District Court resolves the issue, not after receiving an unfavorable ruling," and "[o]nce a question is submitted for decision in the district court, the parties should be bound by the outcome unless other grounds for reversal are present." First Dakota Nat. Bank v. BancInsure, Inc., No. CIV. 12-4061, 2013 WL 6901237, at *3 (D.S.D. Dec. 31, 2013), certified question answered sub nom. In re Certification of a Question of L. from U.S. Dist. Ct., Dist. of S.D., S. Div., 851 N.W.2d 924; Perkins, 823 F.2d at 210. The proposed question has already been addressed by Judge Piersol in ruling on a motion for preliminary injunction and by the Eighth Circuit on an interlocutory appeal. As courts "competent to apply federal and state law," McKesson, 592 U.S. at 5, Judge Piersol and the Eighth Circuit have held that Miller applies to this issue, Doc. 218 at 5 (citing Miller, 9 F.4th at 1015); see also Doc. 85 at 8.

W-E acknowledges that its proposed question has already been decided in federal court. Doc. 221 at 10–11 (noting that "the Court and the Eighth Circuit disagree with Wilber-Ellis's position"). W-E argues instead that this reliance "is misplaced and is out of step with South Dakota's long-running policy," and that "both decisions are based solely on an educated guess as to how the South Dakota Supreme Court would resolve this dispositive issue." Id. at 2, 11. W-E essentially requests certification to seek reversal of Judge Piersol's and the Eighth Circuit's previous decisions. This is not an appropriate use of certification.

Third, there is enough guidance for this Court to correctly predict how to answer this question. Judge Piersol and the Eighth Circuit have largely done so. As stated previously, this question is an ordinary one of contract interpretation, Jurrens, 190 F.3d at 922, and being well-equipped to answer such a question, this Court "should not avoid its responsibility to determine

8

all issues before it," Shakopee Mdewakanton Sioux Cmty., 771 F.2d at 1157 n.2. Adequate guidance exists from the Supreme Court of South Dakota on its principles of contract interpretation, along with the relevant, previously relied-upon Eighth Circuit precedent. Both the nature of this issue and the pre-existing adverse decisions against the moving party weigh heavily against certification.

Fourth, W-E—the party who invoked federal jurisdiction—is seeking certification to the state supreme court, which militates against certification. In the Eighth Circuit, courts "accept the basic principle that federal courts 'should be slow to honor a request for certification from a party who chose to invoke federal jurisdiction,'" especially after the party has received "an unfavorable outcome" and "seeks a second bite of the apple." Smith, 922 F.3d at 412 (quoting 17A Charles Alan Wright, Arthur R. Miller et al., Fed. Prac. & Proc. Juris. § 4248 (3d ed. 2017 update) (collecting cases)); see also Rodriguez, 736 F. Supp. 3d at 732 ("If plaintiff wanted South Dakota courts to decide this issue, he could have filed in state court. He did not."). W-E argues in its reply that it "did not anticipate the specific question [W-E] seeks to certify now would become an issue in this case at all, as it is not a per se element of [W-E's] claim, nor would the question have arisen if the Agreement were interpreted as intended—and as argued—by" W-E. Doc. 227 at 5. This argument reveals W-E's apparent intention to use the certification process to seek a different ruling and stretches credibility given that enforceability of the restrictive covenants is at the core of W-E's breach of contract claim against Jens. See Doc. 22 ¶¶ 107–15. W-E seeks certification after initiating the present suit in federal court two years ago, and this Court is unwilling to find that certification is appropriate just so that W-E in essence may appeal Judge Piersol's and the Eighth Circuit's decisions to the state supreme court.

Finally, certification will further the delay the suit and increase expenses to the parties. "[S]tate certification procedures . . . can prolong the dispute and increase the expenses incurred by the parties." See McKesson, 592 U.S. at 5; Harris v. Karri-On Campers, Inc., 640 F.2d 65, 68 (7th Cir. 1981) ("To certify the questions at this late date would only prolong the life of this litigation at all the parties' expense."). See also Doc. 224 at 10 n.3 (representing that in June 2025, W-E served approximately 22.6 million pages of discovery on Defendants). After two years of litigation and exchange of massive discovery, certification at this point presents undue delay and increased expenses.

Weighing these factors, this Court declines to certify the issue. As in Rodriguez, this Court "need not reach the scope of 'may be determinative of the cause pending'" arguments raised by the parties given that this Court declines to certify the question "based on the other factors." See Rodriguez, 736 F. Supp. 3d at 731–32 (discussing South Dakota's statutory scheme on certification, including the "which may be determinative of the cause pending" clause, and reviewing differing interpretations of that phrase). Any additional factors, such as how often the issue is likely to reoccur, do not compel a different result.

## II. Individual Defendants' Application for Fees

### A. Factual and Procedural Background

During the appeal to the Eighth Circuit, Individual Defendants Jens, Fastnacht, Hoffman, and Hotchkiss, filed a Motion to Compel Discovery. Doc. 155. Judge Piersol referred the Motion to Compel to Magistrate Judge Veronica L. Duffy. Doc. 159.

Judge Duffy granted in part and denied in part the Individual Defendants' Motion to Compel. Doc. 174. Judge Duffy ordered the following: that W-E (1) comply with the Initial Disclosures Rule, Rule 26(a)(1)(A)(iii), immediately and disclose its computation of each category

10

of damages; (2) "immediately provide full and complete written responses under oath to interrogatories 1-8"; (3) "immediately provide all documents that support its calculation of damages" as requested by RFP 1; (4) "produce all documents responsive to RFP 2 that relate to marketing efforts," limited at W-E's request to three locations; (5) "immediately comply with RFP 4"[1]; (6) provide information responsive to RFP 5, which was geographically limited at W-E's request to five states; (7) "immediately provide to defendants all documents which are responsive to RFP 3"; (8) "immediately produce all documents responsive to RFP 6 and 7"; (9) "fully comply with RFP 8 and produce all responsive documents to that request," which Judge Duffy limited geographically; and (10) "respond fully to RFP 9," which Judge Duffy also narrowed. Id. at 17, 20–21, 24, 26–27, 29–30, 32, 34.

Towards the conclusion of the Order, Judge Duffy found that the Individual "[D]efendants satisfied the meet and confer requirement" and that while she "did accept some of W-E's suggested limitations on the discovery, there was other discovery—namely that on damages—that W-E clearly had a duty to provide and blatantly refused, both at the initial disclosure stage and later when served with written discovery requests." Id. at 34. Judge Duffy invited Individual Defendants' attorneys to file an application for attorney's fees under Fed. R. Civ. P. 37(a)(5), but she "caution[ed] defendants to excise time from their request on matters that the court modified, either *sua sponte* or at W-E's request." Id. at 34–35.

W-E objected to Judge Duffy's rulings on the Motion to Compel. Doc. 185. Judge Piersol overruled all objections with the exception of limiting the geographic scope of one discovery request. Doc. 209.

---

[1] This part of the Order was later modified by Judge Piersol, who limited the geographic scope of responsive documents concerning retention efforts in W-E locations in five states as opposed to nationwide, which is what the RFP originally sought. See Doc. 209.

Following Judge Duffy's Order on the Motion to Compel, the attorneys for the Individual Defendants filed an Application for Fees Incurred in Relation to the Motion to Compel, which W-E opposed. See Docs. 192, 193, 193-1, 202, 202-1, 203. Judge Duffy granted in part and denied in part the Individual Defendants' Motion for Attorney's Fees and ordered W-E to pay to Individual Defendants the sum of $11,442.50. Doc. 213 at 13. W-E now objects to Judge Duffy's Order, asking this Court to vacate the Order, or, in the alternative, to modify the Order to apportion reasonable expenses for the motion. Doc. 216 at 1.

This Court "may designate a magistrate judge to hear and determine any pretrial matter pending before the court" with few exceptions not relevant here. 28 U.S.C. § 636(b)(1). This Court reviews a magistrate judge's order on a pretrial matter under the statutory standards found in 28 U.S.C. § 636(b)(1)(A), which provides in relevant part that "[a] judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law." Id. See also Ferguson v. United States, 484 F.3d 1068, 1076 (8th Cir. 2007) ("A district court may reconsider a magistrate judge's ruling on nondispositive pretrial matters where it has been shown that the ruling is clearly erroneous or contrary to law.") (citing 28 U.S.C. § 636(b)(1)(A)). Similarly, under Federal Rule of Civil Procedure 72(a), this Court "must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a).

Matters relating to monetary sanctions under Federal Rule of Civil Procedure 37 "for noncompliance with discovery orders usually are committed to the discretion of the magistrate [judge], reviewable by the district court under the 'clearly erroneous or contrary to law' standard." Gowan v. Farmers Ins. Exch., CV 14-5025, 2016 WL 775758, at *2 (D.S.D. Feb. 25, 2016) (cleaned up and citation omitted). A finding of fact is clearly erroneous "only when [the court is]

left with a 'definite and firm conviction that a mistake has been committed.'" United States v. Gray, 59 F.4th 329, 332 (8th Cir. 2023) (quoting United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948)). "This standard affords deference to the magistrate judge," Sprint Commc'ns Co. L.P. v. Native Am. Telecom, LLC., No. 4:10-CV-04110, 2015 WL 1268299, at *1 (D.S.D. Mar. 19, 2015), and for the reasons stated below, this Court finds that the Order is neither "clearly erroneous" nor "contrary to law." W-E's objections are overruled, and the Order is affirmed.

### B. Federal Rule of Civil Procedure 37 Standard

W-E objects to the standard that Judge Duffy applied to award attorney's fees under Federal Rule of Civil Procedure 37. W-E argues that Judge Duffy's Order on the Motion to Compel misapplied Rule 37 as the Motion to Compel was not "granted *in full*." Doc. 216 at 6.

Under Rule 37(a)(5), there are three possible outcomes following an order on a motion to compel discovery: (1) if the motion is granted, "the court must," subject to a few exceptions, require the party responsible for the conduct necessitating the motion "to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees"; (2) if the motion is denied, the court "must," subject to a few exceptions, require the moving party to pay the party "who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees"; or (3) if the motion is granted in part and denied in part, "the court . . . may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion." Fed. R. Civ. P. 37(a)(5)(A)–(C).

Attorney's fees can be calculated using the "lodestar" methodology or the "percentage of the benefit" methodology, and "[i]t is within the discretion of the [] court to choose which method to apply, as well as to determine the resulting amount that constitutes a reasonable award of attorney's fees in a given case." In re Life Time Fitness, Inc., Tel. Consumer Prot. Act (TCPA)

Litig., 847 F.3d 619, 622 (8th Cir. 2017) (quotations and citations omitted). When calculating "reasonable" attorney's fees under Rule 37(a)(5) using the lodestar method, see Haukaas v. Liberty Mutual Ins. Co., 4:20-CV-04061, 2022 WL 1719412, at *8 (D.S.D. May 27, 2022), the court must "multiply a reasonable number of hours for the work performed by a reasonable hourly rate," Jim Hawk Truck-Trailers of Sioux Falls, Inc. v. Crossroads Trailer Sales & Serv., Inc., No. 4:20-CV-04058, 2023 WL 1825078, at *1 (D.S.D. Feb. 8, 2023) (cleaned up and citation omitted). "The burden is on the moving party to prove that the request for attorneys' fees is reasonable." Atmosphere Hosp. Mgmt., LLC. v. Curtullo, No. 5:13-CV-05040, 2015 WL 1097324, at *1 (D.S.D. Mar. 11, 2015).

Following the calculation of the lodestar, the court may adjust this figure up or down by applying twelve factors known as the Johnson factors, "the most critical" of which "is the degree of success obtained." Hensley v. Eckerhart, 461 U.S. 424, 430 n.3, 434, 436 (1983) (citing Johnson v. Georgia Highway Exp., Inc., 488 F.2d 715, 717–19 (5th Cir. 1974)); Keil v. Lopez, 862 F.3d 685, 701 (8th Cir. 2017). In determining appropriate reductions for partial success, "[t]here is no precise rule or formula," and the court, in its discretion, "may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." Hensley, 461 U.S. at 436–37.

Judge Duffy granted in part and denied in part the Motion to Compel, Doc. 155. See Doc. 213 at 1. Under Rule 37(a)(5)(C), the court "may" apportion reasonable expenses for the motion. W-E is wrong in arguing that it is "clear error" or "contrary to law" for Judge Duffy, in her discretion, to award attorney's fees for a motion to compel where the moving parties, the Individual Defendants, were highly successful. In ruling on the Motion to Compel, Judge Duffy ordered the production of responsive documents or information on all grounds raised by Individual

14

Defendants, although the scope of the ordered production was limited at W-E's request or *sua sponte* on some of those requests. See Docs. 185, 209.

W-E is also wrong in arguing that it is "clear error" or "contrary to law" that Judge Duffy "apportion[ed]" the award under the lodestar method to reflect the limitations on the discovery requests that had been put in place at the request of W-E or *sua sponte*. Judge Duffy noted that the "defendants prevailed on the majority of the issues presented" in their Motion to Compel. Doc. 213 at 11–12. If "a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." Hensley, 461 U.S. at 436. But Judge Duffy did not award the Individual Defendants such an amount. Although the Individual Defendants requested $23,100 in attorney's fees, Doc. 213 at 5, Judge Duffy reduced this amount to $11,442.50 by eliminating block billing entries and found doing so accounted for how she narrowed the scope of some discovery requests, id. at 11–12. Judge Duffy "apportion[ed] the reasonable expenses for the motion" under Rule 37(a)(5)(C) as allowed under Hensley. See Hensley, 461 U.S. at 436–37. Judge Duffy's application of the Rule 37 standard was not clearly erroneous or contrary to the law, and W-E's objection is overruled.

### C. Award of Fees for Entries Submitted

W-E also objects to Judge Duffy's award of fees for Individual Defendants' time entries it contends were "impermissible, unreasonable, vague, duplicative, arbitrarily and inconsistently reduced, or impossible to discern whether they were reasonable because of block entries." Doc. 216 at 7. W-E argues that Judge Duffy improperly awarded fees for entries that contained both compensable and non-compensable work and improperly awarded fees that Individual Defendants did not justify or demonstrate were reasonable. Id. at 8–11.

15

Judge Duffy reviewed the itemized billing statement of the attorneys for Individual Defendants, Doc. 193-1, and she reduced the number of time entries that qualified for attorney's fees under Rule 37. See Doc. 213 at 5–11 (discounting time entries for simple review of W-E's discovery responses, for drafting a motion to compel when the necessity of such a motion could not have been yet anticipated, for completing their duty to confer, and for including both compensable and non-compensable work in an undifferentiated block of time). Judge Duffy only awarded compensation for the entries reflecting time spent researching and writing the Motion to Compel, which she then listed in a chart. See id. at 5, 10–11. The final award amounted to a total of $11,442.50, which was less than half of what Defendants had requested. Id.

Of the three entries specifically disputed by W-E, the descriptions of November 24 and December 18 fall within a permissible category of researching and writing the Motion to Compel. See Doc. 216 at 8 (listing disputed entries' descriptions including review of production 3, 4, and 7 and research on lost profit damages); Doc. 155 (requesting information related to damages and requesting responsive information to RFPs 3, 4, and 7); Tequilla Centinela, S.A. de C.V. v. Bacardi & Co., 248 F.R.D. 64, 69 (D.D.C. 2008) (finding that "Centinela is entitled to payment for the limited number of hours spent comparing the documents produced by Bacardi with its non-production log and with Centinela's document requests . . . [as] efforts [] reasonably linked to Centinela's preparation of its reply memorandum in further support of its Second Motion to Compel"). These entries, a total of 6.3 hours, appear to reflect limited work comparing specific productions and responses that related directly to disputed issues in the Motion to Compel, and it was not clearly erroneous or contrary to law for Judge Duffy to include them in her ultimate reward of attorney's fees.

The November 26 entry appears at first glance to include one reference to work outside of the motion to compel litigation: "Complete first draft brief, continue organize exhibits, draft certificate of compliance, revise motion and statement of relief, review edits from Drew, revise and finalize second draft, organize affidavit/declaration and label exhibits, *draft email to counsel re: Sharefile for sealed exhibits*." Doc. 193-1 at 4 (emphasis added).

In Jim Hawk Truck-Trailers, the non-moving party disputed one claimed time entry of "0.6 hours," which was described as "Analyze reply brief regarding motion to compel; telephone conference regarding motion to compel and upcoming depositions," as vague, duplicative, and containing an entry of work related to upcoming depositions that was unconnected to the motion to compel. 2023 WL 1825078, at *4. The court found the entry to be reasonable, not overly duplicative, and sufficiently specific. Id. However, the court agreed that the reference to deposition work did not relate to the motion to compel and exercised its discretion to reduce the time entry by 33%. Id.

The November 26 entry contains a small reference to an email concerning sealed exhibits, but as Individuals Defendants point out in their Response, they initially reduced the compensable time from 5.4 to 5.2 hours in their Application for Fees. Doc. 193-1 at 4; Doc. 217 at 5. Moreover, it appears that the sealed exhibits referenced in the November 26 time entry were for the sealed exhibits attached to the Motion to Compel, which was filed by the Defendants on November 26, 2024. See Doc. 158 (attaching multiple sealed exhibits). Therefore, it was not clearly erroneous or contrary to law for Judge Duffy, in her discretion, to include this entry, or the other two disputed entries, as compensable work relating to the Motion to Compel. See Doc. 213 at 10.

W-E further disputes all remaining compensable entries as "too vague and/or ambiguous to justify or demonstrate" reasonableness and characterizes the Individual Defendants' proposed

time reductions as arbitrary. Doc. 216 at 9. After reviewing the compensable time entries' descriptions and the related reductions in time, this Court finds it was not clearly erroneous or contrary to law for Judge Duffy, in her discretion, to consider these entries, and their proposed reductions in time, as reasonable, not overly duplicative, and sufficiently specific. See Jim Hawk Truck-Trailers of Sioux Falls, Inc., 2023 WL 1825078, at *4; see also Doc. 213 at 10; Doc. 193-1.

Finally, W-E disputes the award of fees to Individual Defendants for drafting the Application for Fees. Doc. 216 at 9–10. W-E points to its earlier objections to the requested fees and argues that Judge Duffy's "Order awarding those fees was contrary to law and should be voided or reduced appropriately." Id. at 10; see also Doc. 202-1 at 4 (objecting to work as duplicative, questioning the appropriateness of Defendants' proposed time reduction, and objecting to vagueness).

Of the five entries concerning the Application for Fees, two entries describe the time of two lawyers both reviewing the Order on the Motion to Compel, see Doc. 193-1 at 5, but this alone does not require exclusion or reduction. See Jim Hawk Truck-Trailers of Sioux Falls, Inc., 2023 WL 1825078, at *4 ("The court finds that the mere fact that two or more attorneys spend time on the same task does not alone require excluding such hours."); see also id. (citing Atmosphere Hosp. Mgmt., LLC., 2015 WL 1097324, at *3 ("Time spent by two attorneys on the same general task is not, however, per se duplicative and careful preparation often requires collaboration and rehearsal." (cleaned up and citation omitted))). Although W-E argues the February 1 entry was "vague" and described tasks that could be done by a paralegal, this entry was reasonable and sufficiently specific, as were the two remaining uncontested entries concerning research and

drafting. See Doc. 193-1 at 5–6. Judge Duffy's award of fees for work on the Application for Fees was not clearly erroneous or contrary to law.

As noted above, the court, in its discretion, "may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." Hensley, 461 U.S. at 436–37. Judge Duffy reduced the final award of attorney's fees to account for "the limited success" of the Motion to Compel, Doc. 155, and did so by applying the Johnson factors. Doc. 213 at 3, 11–12. Judge Duffy's award of fees under Rule 37 was not clearly erroneous or contrary to the law, and W-E's objections are overruled.

### III. Conclusion

For the reasons stated above, it is hereby

ORDERED that Plaintiff's Motion to Certify Question to the South Dakota Supreme Court, Doc. 220, is denied. It is further

ORDERED that Plaintiff's Objections to the Order Granting in Part and Denying in Part Individual Defendants' Motion for Attorney's Fees, Doc. 216, are overruled. It is finally

ORDERED that the Order Granting in Part and Denying in Part Individual Defendants' Motion for Attorney's Fees, Doc. 213, is affirmed.

DATED this 6th day of October, 2025.

BY THE COURT:

_____
ROBERTO A. LANGE
CHIEF JUDGE