UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| WILBUR-ELLIS COMPANY LLC, <br><br> Plaintiff, <br><br> vs. <br><br> BRETT JENS; J.R. SIMPLOT COMPANY; SHANE FASTNACHT; PHYLICIA HOFFMAN; WES HOTCHKISS, <br><br> Defendants. | 4:23-CV-04104-LLP <br><br><br> ORDER GRANTING DEFENDANT J.R. SIMPLOT COMPANY'S MOTION FOR PROTECTIVE ORDER |

**INTRODUCTION**

This matter is before the court on plaintiff Wilbur-Ellis Company LLC's

("W-E") amended complaint against former employees, defendants Brett Jens,

Shane Fastnacht, Phylicia Hoffman, and Wes Hotchkiss ("individual

defendants"), and their new employer, defendant J.R. Simplot ("Simplot").[1]  See

---

[1] W-E is a California limited liability company with its principal place of business in California.  Its sole member (Wilbur-Ellis Holdings II, LLC) is a Delaware LLC with its principal place of business in California.  And *its* sole member (Wilbur-Ellis Holdings, Inc.) is a Delaware corporation with its principal place of business in California.  Docket No. 22, ¶ 9.  All of the individual defendants are citizens of South Dakota.  Id. ¶¶ 10-13.  J.R. Simplot is a Nevada corporation with its principal place of business in Idaho.  Contra id. ¶ 6; see Docket No. 38, ¶ 3; Docket No. 21, ¶ 7.  Jurisdiction is premised on the diverse citizenship of the parties.  See 28 U.S.C. § 1332.

Docket No. 22.  W-E alleges the individual defendants left their employment with W-E between June 29 and July 10, 2023, to go to work for Simplot, a competitor of W-E.  See generally id.  W-E alleges 12 separate claims against defendants including breach of contract, tortious interference with contractual relations, breach of duty of loyalty, breach of fiduciary duty, violation of state and federal trade secrets laws, unfair competition, and civil conspiracy.  Id. ¶¶ 107-98.

Before Mr. Jens resigned from W-E, he spoke to Clay Gill, counsel for Simplot.  Docket No. 245-1, at 76:11-18.  W-E intends to depose Mr. Gill to obtain information related to Mr. Gill's communications with W-E employees while they were still employed at W-E, as well as any information about Mr. Gill acting as an intermediary between defendant employees and Simplot prior to their resignations.  Docket No. 244, at 1.

Simplot filed a motion for a protective order, seeking to preclude or limit W-E's deposition of Mr. Gill.  Docket No. 239.  Simplot argues that the deposition cannot proceed because it has invoked the attorney-client privilege, attorney work product privilege, and common interest/joint-defense doctrine, and W-E cannot meet its burden of showing "that is has a substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means."  Docket No. 240, at 4-9 (quoting FED. R. CIV. P. 26(b)(3)(A)(ii)).  Alternatively, Simplot requests that the court identify the specific areas upon which W-E is entitled to question Mr. Gill.  Id. at 9.  W-E resists the motion.  Docket No. 244.

Simplot's motion for a protective order has been referred by the district judge to this magistrate judge for decision.  Docket No. 243.

## DISCUSSION

### A.    Standard for Granting a Protective Order

Federal Rule of Civil Procedure 26(c) governs the granting of a protective order.  Under that rule, a court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  FED. R. CIV. P. 26(c).  "In determining whether to issue a protective order, courts apply a balancing test to determine whether good cause has been shown, weighing the moving party's interest in the protective order against the opposing party's interest in obtaining the information at issue."  Sherman v. Sheffield Fin., LLC, 338 F.R.D. 247, 256 (D. Minn. 2021) (quotation omitted).

### B.    Simplot has Demonstrated that it is Entitled to a Protective Order Preventing the Deposition of Mr. Gill

"The scope of discovery under Rule 26(b) is extremely broad."  Donslear v. Kirk Wiles, Kenway Foods, Inc., No. 4:17-CV-04129-KES, 2019 WL 13223870, at *1 (D.S.D. June 4, 2019) (citing 8 Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2007 (3d ed. 2015)).  "This broad scope of discovery applies to depositions[.]"  Pucket v. Hot Springs Sch. Dist. No. 23-2, 239 F.R.D. 572, 579 (D.S.D. 2006).

But depositions of opposing counsel are more limited.  Under the Eighth Circuit's "Shelton test," depositions of opposing counsel are permitted only when "the party seeking to take the deposition has shown that (1) no other

3

means exist to obtain the information than to depose opposing counsel . . . (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case." Thomas v. Marshall Pub. Schs., 690 F. Supp. 3d 941, 954 (D. Minn. 2023) (quoting Shelton v. Am. Motors Corp., 805 F.2d 1323, 1327 (8th Cir. 1986)).

The Shelton court viewed "the increasing practice of taking opposing counsel's deposition as a negative development in the area of litigation, and one that should be employed in only limited circumstances." Shelton, 805 F.2d at 1327. That is because the "long . . . discouraged" practice of deposing opposing counsel "disrupts the adversarial system and lowers the standards of the profession," as well as "add[ing] to the already burdensome time and costs of litigation." Id. "Finally, the practice of deposing opposing counsel detracts from the quality of client representation," as "[c]ounsel should be free to devote his or her time and efforts to preparing the client's case without fear of being interrogated by his or her opponent." Id. The court also worried about the "chilling effect" that deposing opposing counsel would have on truthful communications from clients. Id. It is for these reasons that courts in this circuit allow such depositions only when all three factors of the Shelton test are met.

Neither party disputes that Mr. Gill counts as opposing counsel. C.f. Thomas, 690 F. Supp. 3d at 954 (finding that Shelton test did not apply to deposition of attorney was only involved in a prior, concluded investigation).

Accordingly, the question for the court is whether W-E has satisfied the three-factor Shelton test for deposing opposing counsel.

W-E disagrees with that analysis.  It claims that there are in fact three independently sufficient ways to depose in-house counsel: (1) when in-house counsel engages in non-privileged communications; (2) when the crime/fraud exception applies; and (3) when the Shelton test is met.  Docket No. 244 at 10-11.

The court rejects that argument.  First, the fact that in-house counsel engages in non-privileged communication is not enough to depose in-house counsel.  Indeed, the Shelton test lists information being non-privileged as one of three necessary factors, not as an independently sufficient means to depose in-house counsel.  Were W-E's argument correct, the Shelton test would say "or" before prong three, not "and."  W-E's only basis for this argument is ValveTech, Inc. v. Aerojet Rocketdyne, Inc., No. 17-CV-6788-FPG-MJP, 2021 WL 630910 (W.D.N.Y. Feb. 18, 2021).  Docket No. 244, at 11.  There, a court found that the attorney-client privilege did not apply to communications between an individual and in-house counsel, so a deposition of the in-house counsel could proceed.  Id. at *7.  But ValveTech is an out-of-circuit opinion by a district court.  In the Eighth Circuit, all three requirements of Shelton must be met.

As to W-E's second assertion, the court finds that application of the crime-fraud exception can only be used to satisfy prong two of the Shelton test—i.e., that the information sought is non-privileged.  See Chesher v. Allen,

5

122 F. App'x 184, 188 (6th Cir. 2005) ("The finding of the crime-fraud exception only satisfied the second prong of the Shelton test.  The first and third prongs must also be proven to compel discovery from Attorneys.").

Accordingly, the court holds that there is only one way that W-E can establish that it is entitled to depose Mr. Gill—by satisfying all three prongs of the Shelton test.

### 1. Whether no other means exist to obtain the information W-E seeks than to depose Mr. Gill.

Through deposing Mr. Gill, W-E hopes to gain answers to the following questions:

- How many times did Mr. Gill speak with Mr. Jens before he was employed by Simplot?
- Who asked Mr. Gill to speak with Mr. Jens?
- How long were Mr. Gill's conversations with Mr. Jens?
- Was anyone else present in these conversations?
- Was Simplot aware of Mr. Jens's employment agreement with W-E before Mr. Jens started his employment?

Docket No. 244, at 17 (citing Docket No. 242-10, at 5).

W-E argues that it cannot obtain this information by deposing the individual defendants because the individual defendants do not know what *their* counsel discussed with Mr. Gill. Accordingly, W-E contends, the individual defendants would not know Simplot's knowledge of their contracts.[2]

---

[2] W-E also argues that it needs to know whether Mr. Gill knew about Mr. Jens's non-compete agreement.  Docket No. 244 at 2 & 18.  But the non-compete was no longer in effect at the time Mr. Jens left W-E.  See Docket Nos. 85 & 218.  W-E cannot suggest now, after having its argument rejected at the

The court disagrees. There is not a single question above that cannot be fully answered by deposing the individual defendants or Simplot executives charged with making hiring decisions other than Mr. Gill. To the extent that W-E argues those depositions would be inadequate because they would not include information shared between individual defendants and their counsel, the court finds that information to be privileged. While W-E argues that communications between Mr. Gill and the individual defendants are non-privileged, most of his arguments do not apply to communications between the individual defendants and *their own counsel*. To the extent W-E argues that the crime-fraud exception to privilege applies, this court rejects that argument.[3]

---

trial and appellate level, that there was a valid non-compete agreement that it must question Mr. Gill about.

[3] The crime-fraud exception provides that "the attorney-client privilege does not extend to communications made for the purpose of getting advice for the commission of a fraud or crime." In re BankAmerica Corp. Sec. Litig., 270 F.3d 639, 641 (8th Cir. 2001) (quotation omitted). W-E asserts that that exception applies to claims of intentional torts, such as tortious interference with contractual relations. This court is not aware of any Eighth Circuit case addressing this issue. District courts addressing this issue have provided conflicting answers. Compare Koch v. Specialized Care Servs., Inc., 437 F. Supp. 2d 362, 376-77 (D. Md. 2005) (applying the crime-fraud exception to a claim of tortious interference) with BJ's Fleet Wash, LLC v. City of Omaha, No. 8:22CV131, 2024 WL 1962633, at *2 (D. Neb. May 3, 2024) ("The crime-fraud exception does not apply to attorney-client communications just because Plaintiff believes attorney-client communications may provide helpful evidence to support civil claims, none of which are for fraud or have any element of fraud.").
 The court agrees with the latter position and finds that the application of the crime-fraud exception requires a threshold showing that attorney-client communications are linked to "a specific cause of action based on fraud or a cause of action requiring an element of fraud, such as fraudulent intent."

The court finds that W-E has failed to demonstrate that its proposed deposition of Mr. Gill satisfies prong one of the Shelton test; there is therefore no need to analyze the two remaining prongs.  The court grants Simplot's request for a protective order preventing the deposition of Mr. Gill and it denies W-E's request for fees.  Docket No. 244, at 21.

**CONCLUSION**

Based on the foregoing facts, law and analysis, it is

ORDERED that Simplot's motion for a protective order [Docket No. 239] is granted in accordance with the above opinion.  W-E may not depose Simplot's in-house counsel Charles Clayton Gill.

---

Triple Five of Minn., Inc. v. Simon, 212 F.R.D. 523, 529 (D. Minn. 2002).  The purpose of the crime-fraud exception is to exempt from the attorney-client privilege communications between lawyer and client "made for the purpose of getting advice for the commission of a fraud or crime."  United States v. Zolin, 491 U.S. 554, 563 (1989) (quotation omitted).  Extending this exception to all cases involving intentional torts would consume the broader rule that "communications between an attorney and client are privileged and not subject to disclosure absent consent of the client," "the most sacred of all legally recognized privileges [which is] essential to the just and orderly operation of our legal system."  United States v. Ivers, 967 F.3d 709, 715-16 (8th Cir. 2020) (quotation omitted).  Here, W-E has not alleged any claim sounding in fraud.

**NOTICE OF RIGHT TO APPEAL**

Pursuant to 28 U.S.C. § 636(b)(1)(A), any party may seek reconsideration of this order before the district court upon a showing that the order is clearly erroneous or contrary to law.  The parties have fourteen (14) days after service of this order to file written objections pursuant to 28 U.S.C. § 636(b)(1)(A), unless an extension of time for good cause is obtained.  See FED. R. CIV. P. 72(a); 28 U.S.C. § 636(b)(1)(A).  Failure to file timely objections will result in the waiver of the right to appeal questions of fact.  Id.  Objections must be timely and specific in order to require review by the district court.  Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

DATED this 14th day of April, 2026.

BY THE COURT:

VERONICA L. DUFFY
United States Magistrate Judge

9